Frederick C. Biehl, Esq.
**MᴄCᴀʀᴛᴇʀ & Eɴɢʟɪsʜ, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone:  (973) 622-4444
Facsimile:  (973) 634-7070
Email:  fbiehl@mccarter.com
*Attorneys for Plaintiff*
*Package Development Company, Inc.*

| | |
|---|---|
| PACKAGE DEVELOPMENT COMPANY, INC., a New Jersey corporation,<br><br>         Plaintiff,<br><br>v.<br><br>CEDARS MEDITERRANEAN FOODS, a Massachusetts limited liability company, Kevin Meeks, and DOES 1-10, inclusive,<br><br>         Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MORRIS COUNTY DOCKET NO.:<br><br><u>Civil Action</u><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Package Development Company, Inc. ("Plaintiff"), by and through its undersigned attorneys, for its Complaint against Defendant Cedar's Mediterranean Foods, LLC ("Cedars"), Kevin Meeks ("Meeks") and Does 1 through 10 (the "Fictitious Defendants") (collectively "Defendants"), alleges as follows:

## <u>NATURE OF THE ACTION</u>

1.    This action relates to the breach of a contract for the manufacture of goods by Plaintiff at the request of Defendant Cedars, which contract was confirmed by purchase orders from Defendant Cedars to Plaintiff.

2.    Instead of  Cedars taking delivery and paying Plaintiff for the goods manufactured and to be manufactured for Cedars in accordance with the terms of the parties' contract, Cedars

has refused to accept delivery and pay Plaintiff for the goods it manufactured. It also has failed to order the balance of the goods it agreed to purchase.

3.    The claims against Defendant Meeks are with regard to his tortious interference with the contract between Plaintiff and Defendant Cedars.

4.    Plaintiff seeks to recover damages from both Defendants under various and alternative theories of liability.

**THE PARTIES**

5.    Plaintiff is a corporation organized and existing under the laws of the State of New Jersey with office headquarters located at 100 Roundhill Drive, Rockaway, New Jersey 07866.

6.    Defendant Cedars Mediterranean Foods, LLC is a limited liability company organized and existing under the laws of the State of Massachusetts with office headquarters located at 148 Ward Hill Avenue, Haverhill, Massachusetts 01835.

7.    Defendant Kevin Meeks is an individual with offices located at 585 Forrest Street, Bridgewater, Massachusetts 02324.

8.    The Fictitious Defendants, whose identities are presently unknown to Plaintiff, have been made defendants in this action because Plaintiff is informed and believes, and on that basis alleges, that each of those defendants designated as "Doe" is, in some manner, liable under contract and/or tort theories for the events and conduct referred to herein, and caused damages to Plaintiff as herein alleged.  Plaintiff is informed and believes, and on that basis alleges, that at all times relevant hereto, Fictitious Defendants were the independent contractors, agents, servants and/or employees of their co-defendants, and by engaging in the conduct alleged herein, were acting within the scope of their authority as such agents, servants and/or employees, and with the

2

permission, consent and/or ratification of their co-defendants.  Should Plaintiff learn of the identities of Fictitious Defendants, this Complaint will be amended as appropriate.

## JURISDICTION AND VENUE

9.      Jurisdiction exists in New Jersey as Plaintiff is located in Rockaway, New Jersey and Defendants have contacted Plaintiff in New Jersey on numerous occasions.

10.      Venue is proper in New Jersey because a substantial part of the events or omissions giving rise to the claims in this action occurred in New Jersey.

## FACTS

11.      Plaintiff is engaged in the business of manufacturing and selling plastic goods, and in particular plastic tubs and lids (sometimes hereinafter referred to as "Goods") in the United States.

12.      Cedars is in the business of selling food products in the United States.

13.      Meeks is a manufacturers' representative representing various manufacturers, including EasyPak, LLC ("EasyPak"), in the manufacture of Goods.

14.      In or about early February, 2022, Meeks indicated to Plaintiff that Cedars needed to have Plaintiff manufacture customized Goods for Cedars because Cedars' existing supplier, EasyPak, had failed to properly manufacture the lids and tubs ordered by Cedars. Meeks also indicated that Cedars needed another supplier of Goods because of the substantial growth of its business.

15.       Meeks, as agent for Cedars, organized a meeting between Plaintiff and Cedars in order for Plaintiff to potentially become a supplier to Cedars in the production of Goods.

16.      Later in February, 2022, Plaintiff met with Cedars' Vice President of Procurement, Jay Toland ("Toland"), and Meeks.

3

17.    In that meeting Toland indicated that Cedars wanted Plaintiff to initially manufacture fifty million sets of Goods for Cedars.

18.    Toland further indicated that after Plaintiff produced the first fifty million sets of Goods, Cedars would give a second order to Plaintiff to manufacture an additional one hundred million sets of Goods.

19.    Plaintiff accepted the offer from Cedars to manufacture one hundred fifty million sets of Goods, and committed to producing those Goods.  As a result of Cedars' representations and agreement for Plaintiff to manufacture the Goods, Plaintiff divested manufacturing assets, rearranged its factory floor and warehouse space, and purchased additional capacity and manufacturing tooling at substantial cost and expense in preparation for this volume of business.

20.    In  order to initiate the process of manufacturing the Goods for Cedars, Plaintiff first had to design and create samples of the Goods.

21.    In order to design and create samples of the customized Goods in an efficient and timely manner, Plaintiff requested that Defendants provide product drawings, specifications and details so that Plaintiff could design and manufacture samples of the customized Goods for testing by Cedars.

22.    However, Defendants did not provide to Plaintiff any product specifications, drawings or details.

23.    Plaintiff indicated to Defendants that without the product specifications, drawings and details, Plaintiff would incur substantial cost in designing and creating the samples.

24.     Meeks represented to Plaintiff that it would be worth incurring the substantial cost and expense because Plaintiff was getting an order from Cedars for fifty million sets of Goods and another order for one hundred million sets of Goods thereafter.

25.      The withholding of the product specifications, drawings and details resulted in Plaintiff incurring additional, unnecessary and substantial design costs and expenses, as well as unnecessary delays in the development and manufacture of the sample Goods.  Nonetheless, Plaintiff created the sample Goods which were accepted and approved by Cedars.

26.     Once the Goods were accepted and approved, Cedars placed its initial purchase orders in order for Plaintiff to commence manufacturing the first fifty million sets of Goods.

27.      Thereafter, Cedars was to place purchase orders for the balance of the fifty million sets of Goods, and thereafter purchase orders for one hundred million sets of Goods.

28.      In reliance on Plaintiff's and Defendant Cedars' contract, Plaintiff altered its facilities in order to manufacture the initial fifty million sets of Goods.

29.     Based upon the contract between Plaintiff and Defendant Cedars, Cedars issued the following initial purchase orders to start manufacturing a portion of the initial fifty million sets of Goods:  (i) P.O. # 1-191507 in the amount of $59,000.00; (ii) P.O. #1-191508 in the amount of $530,000.00; (iii) P.O. # 1-191509 in the amount of $60,000.00; (iv) P.O. # 191510 in the amount of $529,000.00; (v) P.O. # 1-191511 in the amount of $76,000.00; and (vi) P.O. # 1-191512 in the amount of $696,000.00.

30.     To date, Cedars has taken delivery of the following portions of those purchase orders: (i) $59,000.00 of P.O. # 1-191507; (ii) $16,960.00 of P.O. #1-191508; (iii) $0 of P.O. # 1-191509; (iv) $0 of P.O. # 191510; (v) $76,000.00 of P.O. # 1-191511; and (vi) $448,876.00 of P.O. # 1-191512.

31.     Plaintiff has contacted Cedars on numerous occasions to accept delivery of the balance of the initial Goods ordered by Cedars but Cedars has refused to accept delivery of the Goods.

32.     Cedars, without any justification whatsoever, has breached the parties' contract by refusing to accept delivery of the balance of the purchased Goods, despite the fact that Plaintiff has been ready, willing, and able to deliver the balance of the purchased Goods to Cedars in accordance with the parties' contract.

33.     Defendant Cedars has specifically breached the parties' agreement by:  (i)  failing to accept delivery of the purchased Goods already manufactured; (ii)  failing to order the balance of the initial fifty million sets of Goods and (iii) failing to place the promised and agreed upon order for one hundred million additional sets of Goods.

34.     As a result of Cedars' failure to accept delivery of the purchased Goods, Plaintiff has incurred significant costs, expenses and damages.

## FIRST CAUSE OF ACTION
### (Breach of Contract Against Cedars )

35.     Plaintiff repeats and realleges the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

36.     Plaintiff and Defendant Cedars agreed that Plaintiff would manufacture and produce one hundred and fifty million sets of Goods for Cedars.

37.     As a result of Plaintiff's agreement to manufacture the Goods for Cedars, and Cedars' agreement to accept delivery and pay Plaintiff for the Goods, a contract was formed between Plaintiff and Cedars.

38.     Certain of the terms of that contract between Plaintiff and Cedars were memorialized and confirmed by purchase orders from Cedars to Plaintiff.

ME1 50900017v.1

39.     Plaintiff accepted the purchase orders from Cedars and did, in fact, manufacture Goods for Cedars.

40.     Plaintiff has been and remains ready, willing and able to deliver one hundred fifty million sets of Goods to Cedars.

41.      Cedars agreed that it would order, accept delivery of, and pay Plaintiff for one hundred and fifty million sets of Goods.

42.     Plaintiff remains ready, willing and able to manufacture and deliver the balance of the Goods contracted for by Defendant Cedars.

43.      Plaintiff performed all of its obligations under the agreement between Plaintiff and Cedars.

44.     Cedars breached its contractual obligations to Plaintiff by failing to (i) accept delivery of the balance of the already manufactured Goods specially manufactured for Cedars and pay Plaintiff for such Goods; and (ii) order and pay for the balance of the one hundred and fifty million sets of Goods.

45.     As a result of Cedars' breach of the contract, Plaintiff was damaged and has incurred damages, additional costs, expenses and attorneys' fees in excess of $2,000.000.00


**SECOND  CAUSE OF ACTION**
**( Breach of Covenant of Good Faith and Fair Dealing Against Cedars)**

46.     Plaintiff repeats and realleges the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

47.     Under New Jersey law, a covenant of good faith and fair dealing is implied in every contract.

ME1 50900017v.1

48.     The covenant of good faith and fair dealing obligates each party to refrain from doing anything to deprive another party of the benefits to which it is entitled under the contract.

49.     Cedars' refusal and failure to (i) accept delivery of the Goods already manufactured and pay for them, and (ii) order the balance of the one hundred and fifty million sets of Goods it contracted to purchase, constitutes a breach of the covenant of good faith and fair dealing.

50.     As a result of Cedars' willful breach of the implied covenant of good faith and fair dealing, Plaintiff has been damaged.

### THIRD CAUSE OF ACTION
(**Account Stated Against Cedars**)

51.     Plaintiff repeats and realleges the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

52.     Plaintiff manufactured and agreed to manufacture Goods for Cedars on an open account.

53.     The account represents a record of a portion of a series of transactions that were entered into between Plaintiff and Cedars under their contract.

54.      Cedars became bound to pay Plaintiff for such goods at the prices agreed upon by Plaintiff and Cedars according to the parties' agreement.

55.     Plaintiff attaches the account purchase orders as <u>Exhibit A</u> and incorporates them by reference.

56.     The purchase orders  accurately set forth a portion of  the Goods ordered by Cedars.

57.     Cedars failed to take delivery of the Goods.

58.     Cedars failed to make certain payments to Plaintiff for the Goods.

59.     This claim is just and true, it is due, and all just and lawful offsets, payments, and credits have been allowed.

8

60.  Plaintiff, as a result of Cedars' breach, was damaged and has incurred damages, additional costs, expenses and attorney's fees in  excess of $2,000,000.00

### FOURTH  CAUSE OF ACTION
#### (Quantum Meruit Against Cedars)

61.  Plaintiff repeats and realleges the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

62.  Cedars accepted and benefited from Plaintiff's agreement to manufacture one hundred and fifty million sets of the Goods for Cedars.

63.   Though Cedars received and accepted the benefit of the agreement to manufacture Goods by Plaintiff, Cedars has failed and refuses to accept delivery and pay Plaintiff for such Goods.

64.   The reasonable value of Plaintiff's goods provided and to be provided to Cedars is in excess of $2,000.000.00

65.  There was an expectation that Cedars would order, accept  delivery and pay for the Goods specifically manufactured for Cedars.

66.  Although Plaintiff has demanded that Cedars comply with the contract, Cedars has refused to do so.

67.  As a direct and proximate result of Cedars' failure to accept delivery of the Goods and remit payment to Plaintiff, Plaintiff has been damaged.

68.  Plaintiff has incurred significant fees and costs gearing up to manufacture such Goods

69.  Cedars has received the benefit of such Goods manufactured and to be manufactured for them.

9

70.     As a result of Cedars' breach of the contact, Plaintiff has incurred damages, costs, expenses and attorney's fees in excess of $2,000,000.00.

## FIFTH  CAUSE OF ACTION
### (Unjust Enrichment Against Cedars)

71.     Plaintiff repeats and realleges the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

72.     Plaintiff agreed to manufacture and has manufactured Goods for Cedars at its' request.

73.     Such Goods were and remain ready for delivery to Cedars.

74.     Cedars was and remains able to accept delivery of the Goods and was reasonably notified that Plaintiff was ready, willing and able to deliver the Goods and expected to be paid by Cedars for manufacturing customized Goods ordered by Cedars.

75.     Cedars refused and continues to refuse to accept delivery of the Goods.

76.     Cedars refused and continues to refuse to make payment for the Goods.

77.     As a direct and proximate result of Cedars' failure to accept delivery of and remit payment for the goods, Plaintiff has been damaged and Cedars has been unjustly enriched.

78.     Plaintiff will continue to incur damages as a result of Cedars' failure to accept delivery and remit payment for the Goods it specifically purchased from Plaintiff.

79.     Thus, Plaintiff is entitled to restitution in an amount to be proven at trial, but in any event no less than $2,000,000.00.

## SIXTH CAUSE OF ACTION
### (Promissory Estoppel Against Cedars)

80.     Plaintiff repeats and realleges the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

ME1 50900017v.1

81.     Cedars promised Plaintiff that if it would gear up its operations to manufacture fifty million sets of Goods, Cedars would order them and then follow up with another order for one hundred million sets of Goods.

82.     Cedars promised Plaintiff that it would accept delivery of the Goods manufactured for Cedars and that Plaintiff would be paid for manufacturing such Goods.

83.     It was foreseeable that Plaintiff would rely on those promises made by Cedars.

84.     Plaintiff did, in fact, substantially rely on the promises made by Cedars to its detriment, as it geared up to manufacture fifty million sets of goods and expended hundreds of thousands of dollars in time, money, and resources in gearing up for the manufacturing of Goods for Cedars.

85.     Plaintiff,  as a result of Cedars' promises and representations, was damaged and has incurred additional costs, expenses, and attorneys' fees in an amount in excess of $2,000,000.00.

## SEVENTH CAUSE OF ACTION
### (Implied in Fact Contract Against Cedars)

86.     Plaintiff repeats and re-alleges the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

87.      A contract implied in fact "arises from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract."

88.     In February 2022, Plaintiff and Cedars commenced a business relationship, and as part of an implied understanding between them, Plaintiff devoted its resources, skills, efforts, labor and expertise in gearing up its operations to manufacture fifty million sets of Goods, and spent hundreds of thousands of dollars manufacturing goods for Cedars.

ME1 50900017v.1

89.     Plaintiff did everything necessary to manufacture such Goods and advanced substantial funds to manufacture such Goods, including tooling.

90.     As a further part of their understanding, Cedars indicated and continued to indicate that it would accept delivery of the Goods made by Plaintiff for Cedars.

91.     Cedars indicated it would order another one hundred million sets of Goods after the initial fifty million sets of Goods.

92.     Cedars also indicated that it would pay Plaintiff for such Goods.

93.     Plaintiff remains ready, willing and able to deliver such Goods.

94.     Without any justification whatsoever, Defendant Cedars refuses to accept delivery of the Goods.

95.     As a direct and proximate result of Defendant Cedars' breach of the agreement, Plaintiff has been damaged.

96.     Plaintiff has incurred damages, costs, expenses and attorney's fees in excess of $2,000,000.00.

## EIGHTH CAUSE OF ACTION
### (Quasi Contract Against Cedars)

97.     Plaintiff repeats and re-alleges the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

98.     Justice, equity and good conscience dictate that a *quasi*-contract has arisen as a matter of law between Plaintiff and Cedars.

99.     As a direct and proximate result of Cedars' breach of the contract, Plaintiff has been damaged.

12

100.    Plaintiff has suffered damages, costs, expenses and attorney's fees in excess of $2,000,000.00.

## NINTH CAUSE OF ACTION
### (Fraud in the Inducement Against Cedars)

101.    Plaintiff repeats and re-alleges the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

102.    Cedars made a material misrepresentation to Plaintiff that if it geared up to manufacture fifty million sets of Goods, it would order fifty million sets of Goods and another one hundred million set of Goods thereafter.

103.    Cedars knew the representation was false or made the representation recklessly without any knowledge of its truth.

104.    Cedars made the representation with the intent that Plaintiff would act on that representation or intended to induce Cedars' reliance on the representation.

105.    Plaintiff justifiably relied to its detriment on Defendant Cedars' false representation.

106.    Plaintiff has suffered damages by actively and justifiably relying on Cedars' false representation.

## TENTH CAUSE OF ACTION
### (Tortious Interference with Contract Against Meeks)

107.    Plaintiff repeats and realleges the forgoing paragraphs as if more fully set forth herein.

108.    Meeks knew of the contract between Plaintiff and Cedars.

109.    Meeks knew the pricing and confidential terms of the contract between Plaintiff and Cedars.

13

110.    Upon information and belief, Meeks, with the full knowledge of the pricing and confidential terms of the agreement between Plaintiff and Cedars, wrongfully solicited AMI and other manufacturers to manufacture the Goods and instructed Cedars not to order any more goods from Plaintiff, but rather from AMI and other manufacturers.

111.    Meeks tortiously interfered with the contract between Plaintiff and Cedars.

112.    As a result of Meeks' tortious interference with the contract between Plaintiff and Cedars, Plaintiff has been damaged.

113.     Plaintiff has suffered damages in excess of $2,000,000.00 as a result of Meeks' illegal and tortious conduct.

## ELEVENTH CAUSE OF ACTION
### (Tortious Interference with Prospective Economic Advantage Against Meeks)

114.    Plaintiff repeats and realleges the prior paragraphs as if more fully set forth herein.

115.    Meeks, as a result of his tortious interference with Plaintiff's economic advantage, has damaged Plaintiff from receiving the benefit of  its contract with Cedars.

116.    As a result of Meeks tortious interference with Plaintiffs economic advantage, Plaintiff has been damaged.

117.    Plaintiff has suffered damages as a result of Meeks' tortious conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Package Development Company, Inc. respectfully prays as follows:

A.     That judgment be entered in favor of Plaintiff and against Defendants on all causes of action;

B.     That Defendants be ordered to pay Plaintiff compensatory damages in an amount to be determined at trial, but in any event not less than $2,000,000.00.

14

C.      That Defendants be ordered to pay prejudgment and post-judgment interest, as allowed by law;

D.      That Defendants be ordered to pay punitive damages in an amount to be determined at trial;

E.      That Defendants be ordered to pay Plaintiff reasonable attorneys' fees and costs incurred in this civil action; and

F.      For all other relief as the Court deems just and proper.

**McCARTER & ENGLISH, LLP**
*Attorneys for Plaintiff*
*Package Development Company, Inc.*


By:____/s/ Frederick C. Biehl, III_____
          Frederick C. Biehl

Dated:  February 3, 2025

## JURY DEMAND

Trial by jury is hereby demanded as to all issues set forth herein.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Frederick C. Biehl, III, Esq. is hereby designated as trial counsel for Plaintiff.

**McCARTER & ENGLISH, LLP**
*Attorneys for Plaintiff*
*Package Development Company, Inc.*


By:____/s/ Frederick C. Biehl, III_____
          Frederick C. Biehl

Dated:  February 3, 2025

15

## RULE 4:5-1 CERTIFICATION

In accordance with R. 4:5-1, it is hereby certified that insofar as Plaintiff is aware, the matter in controversy is not the subject of any other action pending in any other court or pending arbitration proceeding, nor are there any other actions or arbitration proceedings contemplated by Plaintiff. It is further certified that the undersigned counsel is currently unaware of any other party that should be joined in this action. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

**McCARTER & ENGLISH, LLP**
*Attorneys for Plaintiff*
*Package Development Company, Inc.*


By:   */s/ Frederick C. Biehl, III*
             Frederick C. Biehl

Dated: February 3, 2025

## RULE 4:6 CERTIFICATION & CERTIFICATE OF SERVICE

I hereby certify that on this day I caused this Complaint and Jury Demand to be filed with the Court via eCourts; and a true copy of this Complaint and Jury Demand to be served upon Defendants' counsel within the time period allowed by the New Jersey Court Rules.

I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

**McCARTER & ENGLISH, LLP**
*Attorneys for Plaintiff*
*Package Development Company, Inc.*


By:   */s/ Frederick C. Biehl, III*
             Frederick C. Biehl

Dated: February 3, 2025

ME1 50900017v.1